May it please the Court, Stephen Barth of the Federal Defenders, on behalf of the Defendant Appellant, Mr. Rivera-Silas. Your Honors, with regard to my mens rea argument, just as the firearms statute in United States v. Staple was silent with regard to mens rea, so is Title VIII United States Code Section 1326. And just as in that case the Supreme Court read into the firearms statute a mens rea requirement, so should this Court. Unless the statute unambiguously dispenses with mens rea, one needs to be read into the statute. This is the rule rather than the exception in Anglo-American jurisprudence, according to the Supreme Court. On the other hand, Your Honor, strict liability offenses suffer disfavored status under the law because of their tendency to criminalize otherwise innocent conduct. That is, the holding of the Supreme Court in more than one case. That is why the Supreme Court has consistently held that statutes are to be interpreted to require, at a minimum, proof that a defendant knows the facts that render his conduct illegal. And what the government is asking you to do, what it's asking this Court to do, is endorse the idea that Title VIII United States Code Section 1326 is a strict liability offense. Well, haven't we so held, except with the attempt aspect? No. I don't believe so, Your Honor. I don't think this – I believe this question is a question of first impression in this circuit. To the extent that you are referring to Parderosas or any of its progeny, the question before this Court is knowledge, not voluntariness. You're talking about the found in prong? Excuse me, Your Honor? You're talking about the found in prong? We're talking about the found in prong. And you want us to do for the found in prong what we did for the attempt? No, Your Honor. Attempt under Gracidas-Uliberry, this circuit, this Court held that specific intent is required. Right. Specific intent was defined in Gracidas-Uliberry using definitions from the Model Penal Code. I know what it was from. I'm just trying to understand your argument. Are you now saying that you want that same approach applied to the found in prong? No. What I'm asking for, Your Honor, is not for a specific intent requirement, but a general intent requirement. All right. Knowledge that the person is in the United States. I see. All right. Wait a minute. Your argument is that – I thought it was a specific intent argument. No? No, Your Honor. All right. General intent. This Court has specifically rejected that argument in a very old case, Pena-Cavanias from the 1970s. Okay. That's why I was confused, too. I thought you were looking for a specific intent. Go ahead, Roy. Thank you, Your Honor. As I was saying, one need look no further than the Staples case and all the other cases cited in my briefs, that even where a statute is silent with regard to mens rea, a general intent, not a specific intent, but a general intent requirement must be read into statute, so as to differentiate otherwise innocent conduct from criminal behavior. In very rare instances has the Supreme Court found it appropriate to dispense with this traditional mens rea requirement, and it has only occurred in a particular type of offense. Those offenses regulating potentially inherently dangerous, noxious, or harmful devices or objects. These are the types of offenses that, by very reason of the nature of the object regulated, its dangerousness, its harmfulness, it would put the person in possession of that object on notice of its harmful effects. This is not the case with Section 1326 cases. United States v. Freed is a Supreme Court dispensed with mens rea. It is a case in which it was looking at a statute that regulated the registration of grenades, Your Honor. In that case, the court found grenades are of such a harmful nature that this needs to be deemed a public welfare offense. And as such, it stripped, or did not read into the statute, any information in that case where they did not, or they dispensed with the traditional requirement of mens rea. They found that the person still has to know what he has in his hands are grenades. So even in the public welfare offenses in which the court says we are dispensing with mens rea, there still is a knowledge requirement in those cases. And that can be found very well explained in the Staples case. Footnote 3 talks about that, in United States v. Staples. So even in public welfare offenses, and I don't believe this is such a case, there is a knowledge requirement. In Staples, the court looked at whether a rifle that has components to it which would make it a machine gun. A person can be convicted of having such a gun if they didn't know the component parts were of such a nature that it would make the gun fire automatically. In the court of law. What's the general intent that you say needs to be alleged? Knowledge, Your Honor. What is the criminal conduct that makes somebody guilty of an offense of returning to the United States, that is, coming to the United States? Otherwise, this court would be criminalizing behavior, or the statute, I should say, would be criminalizing behavior that is otherwise innocent. The right to travel, the right to move. A person who is, for instance, hiking in the mountains east of southern California, in Arizona, or even Texas, may not know they are in the United States. However, if they enter the country without knowledge, because there is no boundary there, it's a theoretical line, there's not a fence there, then perhaps that person enters without knowledge, he cannot be found guilty of that crime. Why? Because, as the Supreme Court says, general intent is required in such situations. Knowledge of the conduct which makes your acts culpable needs to be known to the court. In dispensing with mens rea, or in looking at the issue of dispensing with mens rea and staples, the court took a close look at the penalties at issue in that case. In that case, a person could be convicted and sentenced up to 10 years in prison for owning a machine gun. Now, in this case, Title VIII United States Code Section 1326 allows for up to 20 years in prison. The Supreme Court has held small penalties should attach to these public welfare offenses at dispense with mens rea. In our system, one which generally requires an evil intent or a guilty mind, a crime imposing severe punishments that does not require mens rea is incongruous with our theory of jurisprudence, Your Honors. One does not need to know his car is traveling 66 miles an hour to be convicted of speeding. There is no mens rea requirement that you know you've crossed above the threshold of the speed limit. However, one is not put in jail for up to 20 years for the crime of speeding. One is fined. Fines and charges are not required. Short durations of imprisonment are traditionally the punishments that are imposed for public welfare offenses. This is not a public welfare offense. This is a serious felony, one which a person can receive up to 20 years in prison. As such, a mens rea requirement, as it was in Staples and all the other cases cited in my brief, needs to be read into the statute. Kennedy. You say it's an open question, though. I mean, Pena Caballos, if I've got that name right, Cabanillas, suggests in any event, if it doesn't hold, that there's an intentional omission. We read it that way in any event, that the statute is what they call malice prohibitive. So why do you think we're free now to add on the mens rea requirement? Well, with regard to Pena Caballos, I would direct the Court to the language of the last paragraph of Pena Caballos, which says, although there is no specific intent requirement, there is a general intent requirement to wit enter. And then they specifically say that general intent requirement was met in that case, and I believe it was a case out of the Eastern District of California or Central District of California, in which the indictment specifically included knowingly and willfully entering the United States. That is what we're asking for here. I think Pena Caballos supports my argument that what we're asking for is not a specific intent, i.e., the purpose, the conscious desire to enter the United States, but instead the knowledge that you are in the United States such that otherwise innocent conduct is not criminalized. But are you familiar with this case that the government cites in the 28J letter of Rodriguez, Rodriguez? Yes, Your Honor. Doesn't that trench on your argument? Almost forecloses your argument, doesn't it? No, I do not believe so, Your Honor. Well, in that case, the argument was the indictment was insufficient because it didn't allege that the entry was voluntary, right? Your Honor, I am not. What's the difference between a voluntary or involuntary entry versus a knowing or unknowing entry? Same thing, isn't it? No, Your Honor. I'm not trying to say that Rodriguez, Rodriguez did not hold that an entry does — found an offense does not need to allege voluntary entry in the indictment. This Court has held in Rodriguez, Rodriguez and Pargorosis that it does not need to put that in the indictment. But voluntariness is different and apart from the general intent requirement of knowledge. As the Court in Grisidis-Ulibarri. No, but it embodies the same concept. In other words, if it's not voluntary or if it's not knowing, maybe it's not voluntary, right? I don't believe so, Your Honor. Somebody can know they're in the United States but not have entered voluntarily. If I'm at the border and somebody forces me across the line, I may know I'm in the United States even though I'm not here voluntarily. And I think what voluntariness goes to is the actus reus of a crime, whereas knowledge, the higher cognitive understanding of something goes to the mens rea aspect of the crime. And so I'm not saying that Rodriguez, Rodriguez is wrong. I don't think that it is on point in this case. I think this is a question of first impression in front of this Court. The Seventh Circuit is the only circuit I have found which has talked about knowledge. In the case I cite in my brief, Carlos Colmanero, in that case, they say you do not need knowledge, you do not need to prove knowledge in a founding case that the person knew he did not have permission to enter. But there needs to be knowledge that he entered. And I think that is what we are asking for here. I'm still troubled because Rodriguez, Rodriguez says the entry doesn't even have to be voluntary in a found in case. Right. Well, it does need to be under Quintana Torres. They need to prove that an entry is voluntary if it's raised by a found in case. I don't think so. Here's a language directly from the Rodriguez, Rodriguez, because it is not necessary to prove or allege voluntary or unlawful entry in a found in conviction. And because voluntary entry makes no difference, you know, it's not a it's not a defense. Your Honor. If that's if it doesn't have to be voluntary, why does it have to be knowing? Your Honor. Isn't that the same principle of all? Your Honor, my understanding is that voluntariness does not need to be alleged in the indictment. Right. Barbarosas, Rodriguez, Rodriguez. What I'm saying is I believe that there is a significant difference, a clear difference between voluntary entering the country and knowing you are in the country. As I said, I believe that voluntariness goes to one's actions, not to one's culpable state. One can know one is in the country and not be here voluntarily. Vice versa. One may not know they're in the country, but be here voluntarily. And that is what the court in Staples, Carter, Lipperata, Morissetti, the Supreme Court has held. You need to know the facts which make your conduct otherwise innocent conduct illegal. And and I don't believe voluntariness, which goes to the actus reus, forecloses this argument. This is an argument of first impression for this court. Your Honor, we regard. I apologize. You don't want to reserve. You don't want to reserve your time for a while. You got about five minutes left. Your Honor, I will reserve my time. Thank you. Good morning, Your Honor. May it please the court. Joseph Wayne on behalf of the United States. The government's position, simply put, Your Honor, is that the district court properly interpreted the law in rejecting the arguments made by defense counsel, excuse me, appellant's counsel this morning. You don't think there even has to be a no in the inquiry? Your Honor, there's two components to this. There is a general intent, and that's what we put forth in our papers. I think the Ninth Circuit is very clear that there is a general intent. This is not a status crime. This is not a crime simply based without any intent whatsoever. And that's been held by the Ninth Circuit. I'm just trying to locate that case. I was sitting there. I couldn't find it. But that has been held, because this means that there is a general intent. What is embodied in general intent? And that general intent is a voluntariness component to it. As Payne Academy has- Wait a minute. We're reading out of Rodriguez-Rodriguez and said you don't have to prove voluntariness. Voluntary entry, I believe, is what Rodriguez-Rodriguez was talking about, the entry component of it. Voluntariness, I still believe, is in my position in reading Pena-Cabanillas and Quintero- excuse me if I- I think it's Quintero-Torres, which is the notion, and they talked about that if it's not voluntary, for example, they even raised the issues if someone was brought in through an extradition involuntary or someone was drugged and brought into the United States, that technically could be a defense, an affirmative defense that a defendant could prove. But whether or not that must be, and they also include in Parga-Rosas that that intent, however, that general intent is embodied in the notion of the found in. It's inferred from the fact that the person was in the United States and they intend to be in the United States. The distinction in there is that they said that- Well, is there a case that directly supports the assertion you just made? Parga-Rosas and Quintero-Torres, Your Honor, talk about the general intent. And Quintero-Torres, in fact, Parga-Rosas cites to Quintero-Torres. Let me quickly get the case and read that portion. That general intent is embodied in the notion found in? Is that what you're saying? Yes, Your Honor. And that Parga-Rosas talks about it when it says on page 1213, although reentry is part of being found in the United States and is embedded in the found in offense, we have never suggested the crime of entry must be charged in. So they're talking about the notion of entry being embedded. But that was, Parga-Rosas was carved out significantly down the road. And the whole point that the government is trying to make, Your Honor, simply put- I'm sorry, one other issue. In Parga-Rosas, they also talk about Quintero-Torres. Page 214 appears about where they talk about a found in conviction and how Quintero-Torres surmised about the possibilities of how someone could come to the United States involuntarily and that they refused, as in Quintero-Torres, to tack on an entry charge into a found in charge. But where is anything about the, you know, the intent requirement? I believe it's on page 1213 when they start talking about the notion of the reentry and the found in, the distinctions between it, and as they try to distinguish the attempted versus the found in. And so the government's position of that is suggesting that there is an embodiment within the found in contention. But really the issue for the government and what the argument is of the government is that there is a general intent requirement that this Ninth Circuit has held, but the question is whether or not that must be in the indictment and that the indictment itself is sufficient as alleged as held throughout by this Court in numerous cases that it tracks the statute as presumptively valid. As it tracks the statute as presumptively valid, it's appropriate that this general intent requirement does not necessarily have to be in the indictment, that it does provide the defendant with the knowledge of the essential elements of a found in offense. Okay. But does it, just so I understand, there's one thing, and Rodriguez seems to deal at least with the voluntariness aspect, as I understand it, which it doesn't have to be in the indictment, alleged or proved. That doesn't mean that the defendant then, in responding under your understanding of general intent, can't come forward and say it was involuntary. Yes. And that's where our intent is at, Rodriguez. That's fine. Okay. So then the next question I have is, can they also come forward and say, and I didn't know I was in the United States. And that argument we would suggest here at that point was trying to create a specific intent component to the found in violation, which is not necessary. If the general intent, and this becomes awkward and I was debating this last night, the idea of the general intent versus specific intent, the notion of general intent is really the voluntariness of the act itself, being in the United States. When you talk about knowledge or intent, I believe you're trying to cross over to the specific intent component of a found in which the score is not found to be appropriate. For example, we would also even argue that entry is not a component that needs to be proved in a found in offense. There is a case I located yesterday, not cited in the government's brief, Pena Jaime, United States v. Pena Jaime, 332F3D609, 9th Circuit, 2003, in which an individual is convicted of a found in offense, even though that person never left the United States. In that case, the person had a one-day reprieve from the attorney general in order to appear at a custody hearing. He then just decided to remain in the United States. In the 9th Circuit, in that case, entry is not necessary to be alleged or even proved. And as a result, there's not even a suggestion that we have to prove that person knew they were coming into the United States or even did come into the United States. The found in itself is sufficient. Well, what happens if, I'm now trying to remember back to Grisittis, which was an attempt, but I can't remember whether we wrestled with it in the opinion or just in thinking about it. But there was the notion that what if the person goes up to the United States borders to get, thinking he's going to get the permission, and he crosses into the United States in doing so, whether that is an attempt, and he's caught, and then his defense says, look, I was simply trying to just go get the paper to get the forms. What happens? And so that was at play somewhere in the attempt statute. Now, we have a found in where he is in the United States, but you're saying it doesn't make any difference whether he knew he was in the United States or not. Well, it's not necessarily, it doesn't make a difference if he knew he was in the United States. My argument is that the indictment doesn't need to allege that. No, I understand. That wasn't my question, though, because my question was, is it an affirmative? You say it's an affirmative. The indictment doesn't have to allege voluntariness, but you have said under general intent, it's at least open to the defendant to prove that it wasn't voluntary. So my question again is, if that's the situation, why isn't it open to the defendant to also prove under the general intent rubric? He didn't know he was in the United States. And that's the awkward position that I'm taking, and I struggled with last night in writing this brief, which is the notion of a specific intent. And that point, knowing that the person is in the United States, knowing that the defendant's knowledge, I would argue, is starting to cross into the specific intent. Starting to is the equivalent of. Or it does create a specific intent component to that. 1326 found and allegation. Well, let me take you back, though. What is your. First of all, government position is one. No, no intent requirement is required to be alleged in the indictment in a found in case, right? That is correct, Your Honor. But there is some kind of a general intent requirement. That's part of the statute? Not as the Ninth Circuit has interpreted it. They have adopted a general intent exists as part of the statute. That says there is a general intent requirement. I believe it's part of your roses as well as content. I don't find it in there. And then what's it? And then what's the case that says doesn't have to be alleged in the indictment? And I mean, in part, it's roses. I'm sorry. Pena. Jaime also talks about general intent, that there's a general intent as well. What was the name of that? That's a new case. Would you say? Yes. My apologies for not saying it. Pena Jaime. Oh, okay. P-I-N-A-J-A-I-M-E. And they talk about that. And that's the case I discussed where they said there's actually no need to even prove that entry existed in that case, that the found in can be inferred from the fact the person was in the United States and remained in the United States. And the one that says the general intent does not need to be in the indictment? And then we would argue that's an extension of Pargis Roses from the notion that they talk about the embeddedness of it. There's no specific case that we say that we can point to that says general intent does not need to be in the indictment. Just a logical extension of Pargis Roses and the purpose of an indictment itself, which in tracking the statute, we believe is presumptively valid and also gives knowledge of the actual elements. And you say it's an extension of Pargis Roses? Yes, Your Honor. Pargis Roses doesn't say that in so many words. Yeah, and that's what we're saying. Pargis Roses talks about the embeddedness of the entry. So then you agree with the appellant, at least to this extent, that there is no case directly on point addressing his assertion? I do agree. And I had struggled with that, trying to find a case to talk specifically about that general mens rea that he's trying to assert into the indictment, that the person knew he was in the United States. And as a consequence, I had to go back to Pargis Roses, the logic of that, get the extension to the logic of what an indictment is and the purpose of an indictment, to see whether or not the indictment is sufficient, which is the question really that the defendant or the appellant is trying to raise, that the indictment must be changed because there is a mens rea. And we don't disagree that there is a mens rea here. We're not arguing with the statutes. Okay. And that's going to be my next question then. Let's suppose we agreed with appellant that there was embedded within general intent not only a defense of involuntariness, but also a defense of lack of knowledge. How does that affect this case? Then I think, again, it goes to the question of whether or not it needs to be in the indictment itself. And if it wasn't, and it didn't have to be, was he foreclosed from presenting that evidence? No. In fact, he's not because, as Quintana Torres suggested, they can present that evidence in court, even though it's not necessarily alleged in the indictment, it exists as part of the 1326 founding offense. If they were to go back and say, I was kidnapped when you took me to Mexico without my will, beyond my will, that could be something that could be sent to the jury whether or not the general intent was there. So without hunting rabbits, he wanted to cross the border without knowing it. Okay. Now this came on a plea. Yes, Your Honor. And with reserve right, was there, was part of the reservation in the plea that this knowledge issue, so that as it was raised as a defense? I do believe the, are you the mens rea before? Okay. So if we were to uphold the claim that there has to be general intent to acknowledge that is, that issue has been preserved. So the plea should be then vacated. Not that the plea is vacated, Your Honor. I believe the issue becomes, if I can quickly say that, that issue has been preserved to an extent, I would say, Your Honor. Yes. It would have to go back. The plea should be vacated and his motion to dismiss should be granted. You know, maybe you should get, maybe you should have the opportunity to file a, file a. Or a superseding, Your Honor, to that extent. If the court feels it's necessary to be a part of the indictment, then I believe. Let me ask this question. In a case that's not, I'm still trying to understand this concept. In a case that, you know, not pleaded out but goes to trial, in this kind of case, if there is a general intent requirement, is there some jury instruction on it? I haven't found the jury. I think it, I know that it's been argued in cases before. In fact, one of my cases where the issue was, you know, whether or not a person believed he was in the United States. There's one issue, although we didn't go to trial on that. It was an issue that we were going, prepared to litigate. It's happened in other cases where people talk about duress and whether or not they meant to come to the United States, they had to come to the United States. And that has been deemed an affirmative defense, at least in cases. I don't have a case law on that, unfortunately, Your Honor. But I do believe Katana Taurus would suggest that if someone has that kind of defense, that they can raise it and that can negate that general intent. That's why we are conceding that point to the extent that Katana Taurus suggests that. Okay. So I still am a little confused then. As the case is postured, if we were to hold that it is an affirmative defense, not necessary, however, to be alleged in the indictment on this plea status, is he entitled under that holding to get the plea vacated? I believe he would, Your Honor. The fact that it wasn't in the indictment isn't the issue. The question is whether he had the opportunity to prove it. I believe he did raise it and argue it in his motions before the district court. And to that extent, I would suggest that the sentence would be set aside, the plea set aside, but the government would have the opportunity to supersede. Yes. Assuming also that the suggestion is found that an indictment, well, I would just submit on that issue. Okay. Well, no, I appreciate your candor. All right. And then with the, and I just have a couple more minutes remaining, Your Honor, the one other issue that was raised in an appellant's brief is the notion of the uncounseled deportation leading to eventual imprisonment and the suggestion that Alabama v. Shelton requires that there be counseled deportation. We do believe that that's a misinterpretation, misreading, an extension of Alabama v. Shelton. Alabama was, I'll just call it Shelton, actually, it was a case involving a misdemeanor that led to a suspended sentence. The court focused on the fact that it was a suspended sentence and that a sentence of imprisonment was imposed. The brunt of that ruling is that a suspended sentence is still a sentence of imprisonment, even though later triggered by a probation violation. And the analysis really for the Shelton court was you have to look back at that proceeding in which the sentence was imposed. Did that person have a right to counsel under the Sixth Amendment? They said yes. In this case, the imposition of the sentence is that 1326 found in proceeding. He had a right to counsel. The extension of it to an uncounseled deportation, I believe, is unwarranted. That's where Laura Aceves comes in and says, listen, at that proceeding where there was no imprisonment, but assuming that the court wants to go to suggest that that somehow does apply, you still don't have a right to counsel because that's a civil administrative proceeding. And as a result, we would say the logical extension of that defendant's argument is that any administrative proceeding which can ultimately result in some type of imprisonment in a number of different ways that could be postulated should have a right to counsel. That could be an administrative proceeding. It could even be a civil proceeding if it somehow leads to that down the road. For example, a tax case, if there's a tax proceeding and then down the road there's a tax fraud, then the suggestion would come back and the logical extension under the defendant's or appellant's argument would be that there had to be a right to counsel there. And we just don't believe that extension is warranted under a reading of Shelton or under the law. And with that, we would submit, unless there are any other questions on the brief. Roberts. No. All right. Thank you very much. Thank you, Your Honor. All right. Rebuttal. Thank you, Your Honor. Mr. Nguyen, the government takes the admittedly awkward position that, yes, there is a general intent requirement. However, that knowledge requi... or that mens rea, general intent requirement, is voluntariness, not knowledge. I believe that is the essence of his argument. However, in Gracetus Woolbury, it says, purpose corresponds to the concept of specific intent, while knowledge, in quotation marks, corresponds to general intent. And if you look at Staples, and you look at all the cases that have talked about the very basic idea of general intent, it is the knowledge of the facts which make your conduct, otherwise innocent conduct, illegal. Your Honor, the government concedes that general intent is a requirement. If it is a requirement to convict, Your Honor, then it is required to be alleged in the indictment. United States v. Hill. That is a case out of this, this circuit. Moreover, an indictment's failure to recite an essential element of the charged offense is not a minor or technical flaw, but a fatal flaw requiring dismissal of the indictment. That's Dubot, also out of this circuit. What's your response to the question Judge Fisher asked your opponent that, well, if we agree with you, what's your remedy? Your Honor, the indictment would be flawed. The case would need to be the conviction and plea would need to be reversed and remanded. And, of course, unfortunately for Mr. Rivera-Cias, they could always supersede with a new indictment, adding the simple word knowingly, and we would be back at square one. But it would need to be reversed and the government would have to obtain a superseding indictment, go before a new grand jury and get that indictment. But your argument is that if we were to hold it is embedded in general intent, it has to be alleged and proved in the alleged in the indictment and proved by the government? Yes, Your Honor, not only... Okay, now, how does that square with Rodriguez, which says that voluntariness doesn't have to be? Again, Your Honor, I believe the difference is that voluntariness does not go to the idea of mens rea. It goes to the actus reis. As I just read to you from Gracides Ulibarri, general intent corresponds to the idea of knowledge and Staples, Carter, Lipperata, all the Supreme Court cases that talk about general intent that need to be read into silent statutes talk about knowledge and not voluntariness. I think voluntariness is part of the act, Your Honor. It is considered embedded in the idea that you enter it is a voluntary entry. Your Honor, I do need to address the Sixth Amendment argument that I made because I believe government counsel has has incorrectly stated my argument that is that a defendant in a 1326 case must have had a appointed counsel at a deportation hearing. That is not my argument. That argument was made and rejected by this court in the case of United States v. Lara Sievis. My argument is that if a person is subject to penalties custody time as a result of a conviction that becomes unconstitutional under the Sixth Amendment because he did not have counsel as deportation proceedings. Just as in Shelton. Absolutely. The deportation proceeding itself will not put him in prison. He's got to do something else. There has to be a subsequent act and that act puts him in prison and he's entitled to counsel. That is true, Your Honor. The argument that I'm making is just as in Shelton as in Scott as in Arsinger v. Hamlin. A defendant does not have a Sixth Amendment right to counsel in misdemeanor proceedings. They do not under that line of cases. However, if they are then put in custody as a result of those proceedings, the sentence not the conviction but the sentence is deemed unconstitutional under the Sixth Amendment just as those defendants did not have a right to counsel in those. But the problem is that you've got a hiatus here. In other words, you're skipping a hurdle which is that he leaves, he comes back, he's apprehended, he's indicted, tried, and convicted. He's entitled to counsel at that conviction. How do you carry that backwards to the act which preceded everything? Okay. Your Honor, I believe looking at Shelton one does do exactly that. Not that a person deserves his counsel at deportation proceedings under the Sixth Amendment. But as in Shelton, the Court said you cannot look at these sequential proceedings separately and that just because somebody is not Wouldn't you giggle a little bit if you read an indictment that your opponent filed which said we want this man sent to prison because he had a deportation proceeding. That's all they say. Not that he left and came back, he was apprehended. He just had a deportation proceeding. We want him to go to jail. Yes, Your Honor. There's no Wouldn't you? Well, it certainly would be there's no crime of having been deported. Absolutely, Your Honor. Right. And in Shelton there was a crime and then you had to look at the penalty. All right. Here, there's no crime at the time of the deportation hearing at which he was not entitled to counsel, didn't get counsel, so I just don't understand how you tie those together. That's correct, Your Honor. In Shelton, however, the defendant was not sentenced to immediate or even But the revocation was in the same as they say the suspended sentence is a prison term imposed for the offense of conviction. Once the prison term is triggered, the defendant is incarcerated not for the probation violation but for the underlying offense. He is not being imprisoned for reentry for because of the prior deportation. Your Honor, I do believe in part Not the same offense. It's a different crime. Well, Your Honor, the court, the government, they do rely on the fact of deportation in making a conviction Well, they rely on it. It's proof. It's a prior. It's an event. But he's not being put in prison for being deported. That now becomes a fact and now in a subsequent proceeding it is being used against him to justify a conviction. But that is an we would clearly be extending Alabama v. Shelton, wouldn't we? I think to the extent it's an extension, Your Honor, it's a logical extension. The court is relying How can we what do you think they meant to emphasize when they say once the prison term is triggered the defendant is incarcerated not for the probation violation but for the underlying offense. Yes. The underlying offense in that case was the misdemeanor. Okay. In this case the underlying offense is the illegal reentry. If to take your analogy we'd have to go back as I understand it and say the underlying offense is the deportation proceeding but because as Judge Nelson is pointing out you're making a step which is a subsequent act on a different crime you come back in and say because of that prior deportation it the deportation has now got attached to it a criminal penalty. That is true but it took the defendant committing a crime to impose that. The deportation order wasn't you won't go to prison if you leave and if you come back you're going to get that wasn't the order that's the consequence of the statute. If he leaves and comes back under the illegal entry it acts as a predicate to the subsequent statutory crime but it's a separate crime isn't it? Your Honor it's a crime that relies an element of is the deportation and the deportation is an adjudication That's not what the Supreme Court says it's the incarceration is not for the probation violation but for the underlying offense and the underlying offense to make your analogy without making an extension hold up would have to be the administrative deportation proceeding Very well Your Honor I think the point that  to raise is that the deportation proceeding although there is no Sixth Amendment right to counsel there once it is used in the criminal how you how the logic of that that says that at any time in admittedly administrative proceedings that if sometime later the defendant can on his own volition with knowledge if we accept your reading prevent the illegal re-entry by saying well I didn't get counsel with that therefore you can't use it against me which would mean in effect you'd have to provide counsel at all administrative deportations if the government  to rely on that deportation hearing for an illegal re-entry For an illegal re-entry in which you receive custody time Your Honor Certainly a conviction could stand although it would be seen to be able to put him in the slammer Exactly and of course the government would also always have the option of prosecuting under illegal entry section 1325 which does not rely on a deportation Or just a straight deportation All right we understand your position we appreciate the argument of both counsel a very well argued case and this case is now submitted for decision
judges: T.G. Nelson, Tashima, Fisher